[Cite as *Falah v. Falah*, 2021-Ohio-4348.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| JAMILA FALAH | | C.A. No. 20CA0039-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| GHAZI FALAH | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 14 DR 0051 |

DECISION AND JOURNAL ENTRY

Dated: December 13, 2021

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Ghazi Falah ("Husband"), appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} This Court previously set forth the underlying facts and procedural history of this case as follows:

Husband and * * * Jamila Falah ("Wife") married in Israel in August 1981 and had four children during the course of their marriage, three of whom are now adults and one of whom is deceased. Husband is a tenured university professor who taught in multiple countries over the years while Wife remained alongside him and raised their four children. The family ultimately settled in Wadsworth in 2001, but both Husband and Wife continued to travel internationally to visit family and friends.

In August 2013, one or both of the parties decided to divorce, and they both prepared their Wadsworth home for sale. Both parties remained at the marital residence until October 2013, when Wife went on a trip to Israel. Husband then followed Wife to Israel and, in December 2013, filed for a divorce in the Sharia Court. Wife initially refused service, but ultimately secured an attorney in Israel, participated in the proceedings, and received a deferred dowry. While the Israeli

proceedings were still pending, however, Wife also returned to the United States and filed a complaint for divorce in Medina. Following her return, Wife continued to reside in the marital residence until it sold in July 2014.

Husband responded to Wife's complaint in Medina by filing a motion to dismiss for lack of jurisdiction. He argued both that Wife had abandoned her Ohio domicile when she left for Israel and the court had to cede jurisdiction to Israel, where he had filed for divorce. Before the court could hold a hearing on Husband's motion, the Sharia Court issued a decision, approving a divorce for the parties under Israeli law. Husband then filed a supplement to his motion to dismiss, notifying the court of the divorce in Israel. In August 2014, while this matter was still pending, Husband remarried in Israel.

A magistrate held a hearing on a Husband's motion to dismiss in December 2014 and later denied it. The trial court adopted the magistrate's decision, and scheduled the matter for a final divorce hearing. The final hearing took place before the trial judge in March 2015. In its final judgment entry, the court purportedly gave comity to the parties' Israeli divorce decision, but it also granted a decree of divorce and set forth orders for the division of their assets and the allocation of their debt. Additionally, it ordered Husband to pay Wife permanent spousal support in the amount of $2,750 per month.

*Falah v. Falah*, 9th Dist. Medina No. 15CA0039-M, 2017-Ohio-1087, ¶ 2-5. Husband appealed from the judgment of the trial court, and this Court affirmed in part, but also reversed in part because the trial court "acted unreasonably in failing to address the temporary support that Husband had already paid." *Id.* at ¶ 28. We remanded the matter "for the court to address the temporary support Husband paid in light of its decision to vacate the order for temporary support." *Id.* at ¶ 28, 44. Upon remand, the trial court issued a nunc pro tunc final judgment entry of divorce in June 2017, which modified its April 2015 entry to now award Husband an additional credit of $15,200 for temporary spousal support that had been withheld and paid from December 2014 through March 2015.

{¶3} Meanwhile, during the pendency of that appeal, Husband filed motions to terminate spousal support and for orders regarding personal property, and Wife filed motions to modify spousal support, to show cause for failure to pay spousal support, and for spousal support

to be paid through the Child Support Enforcement Agency ("CSEA"). Husband also filed a reply to Wife's motion for spousal support to be paid through CSEA. A magistrate held a final hearing on these competing motions in May 2018 and issued her decision in October 2018. The magistrate dismissed Wife's motion to modify spousal support, granted Wife's motion for spousal support to be paid through CSEA, denied Husband's motion to terminate spousal support, and denied Husband's motion for orders regarding personal property. As for Wife's motion to show cause for failure to pay spousal support, the magistrate found Husband to be in contempt of court for failure to pay spousal support. The trial court issued a judgment entry on the same day as the magistrate's decision, *see* Civ.R. 53(D)(4)(e)(i), adopting the magistrate's findings and entering judgment on the matter.

{¶4} Husband filed timely objections to the magistrate's decision in October 2018 and later supplemented his objections in January 2019. The trial court heard oral arguments on the objections in April 2019 and issued a judgment entry overruling Husband's objections in June 2020. In its entry, the court confirmed its prior judgment and stated: "Since the [c]ourt has already independently entered judgment on the [m]agistrate's [d]ecision, the [j]udgment [e]ntry that was journalized October 18, 2018 shall remain in full force and effect."

{¶5} Husband now appeals from the trial court's judgment and raises four assignments of error for this Court's review. We have rearranged the order of Husband's assignments of error to facilitate our review.

II.

**ASSIGNMENT OF ERROR TWO**

THE TRIAL COURT ERRED IN ADMITTING APPELLEE'S EXHIBIT 6 PURPORTING TO BE PROOF OF A FOREIGN MARRIAGE AND FINDING THAT MR. ALMOUHAMAD WAS MARRIED ON SEPTEMBER 22, 201[6,] WHEN HE MARRIED APPELLEE IN OHIO.

{¶6}     In his second assignment of error, Husband argues that the trial court erred in admitting into evidence a picture of a purported foreign marriage contract ("Exhibit 6") between Abd Alrahman Almouhamad ("Mr. Abdul") and Ebtisam Elmousleh ("Ms. Elmousleh"). Because this issue was not properly preserved below, we conclude that Husband has forfeited his argument on appeal.

{¶7}     The decision to admit or to exclude evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Homler v. Homler*, 9th Dist. Lorain No. 05CA008752, 2006-Ohio-2556, ¶ 14. An abuse of discretion implies the court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶8}     The trial court's nunc pro tunc final judgment entry of divorce provides that "[s]pousal support * * * shall continue until the death of either party, the remarriage of the Wife[,] or the cohabitation of the Wife with an unrelated adult male." At the final hearing on the motions, the parties stipulated that Wife entered into a purported marriage contract with Mr. Abdul in Ohio on September 22, 2016. Nevertheless, Wife testified that she never consummated the marriage with Mr. Abdul, he did not financially support her, and they never cohabited, as her religious and cultural beliefs first required a formal announcement of the marriage to family and friends. According to Wife, she was aware Mr. Abdul was divorced from Ms. Elmousleh, but she later learned from a phone call with her son—in which she could hear Husband talking in the background—that Mr. Abdul had remarried Ms. Elmousleh prior to Wife's 2016 marriage to Mr. Abdul. Under Ohio law, only persons "not having a husband or wife living" may be joined in

marriage. R.C. 3101.01(A).[1] Bigamous marriages are therefore void ab initio and of no legal purpose. *Darling v. Darling*, 44 Ohio App.2d 5, 7 (8th Dist.1975).

{¶9} Wife testified that Husband had Ms. Elmousleh send a picture of a foreign marriage certificate ("Exhibit 6") to their son who, in turn, texted it to Wife. According to Wife, Mr. Abdul soon left the United States in November 2016 at her behest. At the time of the final hearing, Wife had filed for divorce from Mr. Abdul and the case was still pending. When confronted with Exhibit 6 at the hearing, Husband testified that he did not recognize it and claimed that he never sent it to the couple's son. He testified that Exhibit 6 was a "false piece of paper." Exhibit 6 is written in Arabic and was later admitted into evidence at the close of the hearing over Husband's objection. It is accompanied by a certified Arabic-to-English translation from the International Institute of Akron. The translation indicates that Exhibit 6 purports to be a foreign marriage contract between Mr. Abdul and Ms. Elmousleh, who were married in the city of Tripoli in September 2014.

{¶10} Husband argues on appeal that the trial court erred in admitting Exhibit 6 into evidence because it is a copy of a writing in Arabic, which is not certified or verified and is not accompanied by a certificate of genuineness, as required by Evid.R. 902(3). Husband further contends that the accompanying Arabic-to-English translation only certifies that the translation itself is accurate; it does not certify the authenticity of the foreign marriage certificate. He argues that Exhibit 6 was also improperly admitted because it is incomplete and constitutes inadmissible hearsay. Finally, he argues that the court improperly found Wife's testimony to be credible when Wife's opinion was based solely on her reliance upon Exhibit 6.

---

[1] Although not relevant to this appeal, we note that this statute has been declared unconstitutional on other grounds related to same-sex marriage. *See, generally, Obergefell v. Hodges*, 576 U.S. 644 (2015).

{¶11} We conclude that Husband has not properly preserved his arguments for appeal. Pursuant to Evid.R. 103(A)(1), "[e]rror may not be predicated upon a ruling which admits * * * evidence unless a substantial right of the party is affected[] and * * * a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *." During the hearing, Exhibit 6 was marked for identification, and Husband was questioned by Wife's attorney about it without objection. Wife was likewise questioned about Exhibit 6, and she identified it and explained where it came from without objection. Husband's attorney then questioned Wife further as to Exhibit 6 on re-cross examination. Although Husband ultimately objected to the admission of Exhibit 6 into evidence at the close of the hearing on the bases that it is "in Arabic" and "we don't know if it's accurate as well[,]" he never objected to either the exhibit or to any of the testimony regarding the exhibit during the hearing.

{¶12} When a party fails to contemporaneously object to the testimony and identification of an introduced exhibit, and only later objects, after the close of evidence when the exhibit is being admitted into evidence, he forfeits the matter for review on appeal. *See State v. Henry*, 9th Dist. Summit No. 27758, 2016-Ohio-680, ¶ 10, citing *State v. Sykes*, 9th Dist. Summit No. 25263, 2011-Ohio-293, ¶ 8. *See also State v. Hughes*, 9th Dist. Summit No. 27061, 2014-Ohio-4039, ¶ 8; *State v. Payne*, 9th Dist. Summit No. 26655, 2013-Ohio-5230, ¶ 10; *State v. Rice*, 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 21; *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 49; *Fleischer v. George*, 9th Dist. Medina No. 09CA0057-M, 2010-Ohio-3941, ¶ 14-15; *State v. Gray*, 9th Dist. Wayne No. 08CA0057, 2009-Ohio-3165, ¶ 7. "Indeed, '[t]he contemporaneous objection rule is fundamental to our jurisprudence.'" *Condon v. Rockich*, 9th Dist. Summit No. 28479, 2018-Ohio-71, ¶ 17, quoting *In re M.B.*, 9th Dist.

Lorain Nos. 11CA010060 and 11CA010062, 2012-Ohio-5428, ¶ 11, quoting *Steward v. Norris Bros. Co., Inc.*, 8th Dist. Cuyahoga No. 53540, 1988 WL 32117, *1 (Mar. 17, 1988). "'The rule serves the interest of justice because it allows for the correction of many defects while they are readily curable, as well as it encourages the elimination of delay and the unnecessary use of the appellate process.'" *Id.*, quoting *In re M.B.* at ¶ 11. Moreover, although Husband argued in his supplemental objections to the magistrate's decision that the court erred in admitting Exhibit 6 into evidence, "[t]his Court has stated that '[t]he filing of a written objection to the decision of a magistrate is not a substitute for the obligation to object to a purported error at the time of its occurrence.'" *Id.*, quoting *In re M.B.* at ¶ 11. In this case, any purported errors with Exhibit 6 could have been easily corrected had an objection been timely made. *See id.* While an appellant who has forfeited such an argument may still argue plain error on appeal, *see* Evid.R. 103(D), this Court will not sua sponte undertake a plain-error analysis if the appellant fails to do so. *See Sykes* at ¶ 8, citing *Akron v. Lewis*, 179 Ohio App.3d 649, 2008-Ohio-6256, ¶ 22 (9th Dist.). Husband has not argued plain error in this matter.

{¶13} Husband's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN FAILING TO ACCEPT AND CONSIDER THE CERTIFIED COPY OF APPELLEE'S OHIO DIVORCE DECREE AND ERRED IN FINDING THAT THE APPELLANT DID NOT PROVIDE ANY EVIDENCE ON THAT ISSUE AT TRIAL.

{¶14} In his third assignment of error, Husband argues that the trial court, during oral arguments on Husband's objections to the magistrate's decision, erred in not accepting a decree of divorce which he contends reflects the validity of the 2016 marriage between Wife and Mr. Abdul.

{¶15} Husband contends that "a dissolution of a marriage in a divorce proceeding connotes that the marriage is valid with it being terminated under one of the grounds provided for in [R.C.] 3105.01" and "[a] party to a void marriage can only file for divorce to declare it a nullity." Husband directs us to no legal authority, however, in support of his arguments under this assignment of error. *See* App.R. 16(A)(7) (requiring "citations to the authorities, statutes, and parts of the record on which appellant relies."); *accord* Loc.R. 7(B)(7). "It is an appellant's duty to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record * * *." *McDonald's USA, LLC v. Lorain Cty. Bd. of Revision*, 9th Dist. Lorain No. 18CA011279, 2019-Ohio-4217, ¶ 34. It is not the function of this Court to construct a foundation for Husband's alleged error, or to search for authority to support his argument. *In re Estate of Irvine*, 9th Dist. Summit No. 28901, 2019-Ohio-772, ¶ 11. Because Husband has failed to cite to any legal authority upon which he relies under this assignment of error, we decline to address it. *See Wrinch v. Miller*, 183 Ohio App.3d 445, 2009-Ohio-3862, ¶ 45 (9th Dist.).

{¶16} Even assuming we were to address the merits of this assignment of error, we note that the purported 2016 decree of divorce between Wife and Mr. Abdul is not contained in the record before us. This Court's review on appeal is restricted to the record provided by the appellant. *See Harding v. Harding*, 9th Dist. Summit No. 27464, 2016-Ohio-7028, ¶ 9; App.R. 12(A)(1)(b). *See also Emergency Physicians Ins. Co. RRG v. Emergency Physicians Ins. Exchange*, 9th Dist. Summit No. 28747, 2018-Ohio-566, ¶ 8, citing *Volodkevich v. Volodkevich*, 48 Ohio App.3d 313, 314 (9th Dist.1989) (noting appellant's responsibility to provide a record of facts, testimony, and evidentiary matters necessary to support an assignment of error). As Husband would not be able to demonstrate error by referencing a document not contained in the

record, we would presume regularity in the proceedings and overrule this assignment of error. *See Harding* at ¶ 9.

{¶17} Husband's third assignment of error is overruled.

## ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN FAILING TO TERMINATE SPOUSAL SUPPORT DUE TO APPELLEE'S RELIGIOUS MARRIAGE IN 2015 AND HER OHIO MARRIAGE ON SEPTEMBER 22, 2016[,] BASED UPON THE LANGUAGE IN THE NUNC PRO TUNC FINAL JUDGMENT ENTRY OF DIVORCE WHICH PROVIDES FOR TERMINATION OF SPOUSAL SUPPORT UPON WIFE'S REMARRIAGE.

{¶18} In his first assignment of error, Husband argues that the trial court abused its discretion in failing to terminate spousal support because Wife and Mr. Abdul entered into a religious marriage outside of the United States in April 2015 and then entered into a secular marriage in Ohio in September 2016.

{¶19} Generally, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶20} "The Supreme Court of Ohio has concluded that 'the difference between a modification and a termination of alimony was a distinction without a difference. Modification

and termination of an alimony award are simply different points or degrees on the same continuum.'" *Kelly v. Kelly*, 9th Dist. Wayne No. 18AP0048, 2019-Ohio-4723, ¶ 10, quoting *Kimble v. Kimble*, 97 Ohio St.3d 424, 2002-Ohio-6667, ¶ 7. "This Court reviews a trial court's decision to modify spousal support under an abuse of discretion standard." *Michaels v. Michaels*, 9th Dist. Medina No. 12CA0029-M, 2013-Ohio-984, ¶ 7.

{¶21} We first note that the trial court's jurisdiction to modify or terminate spousal support is not disputed here, as the nunc pro tunc final judgment entry of divorce contains a provision that the court "retains jurisdiction over all aspects of spousal support." *See Kimble* at ¶ 10 ("[P]ursuant to R.C. 3105.18(E), a trial court has the authority to modify or terminate an order for alimony or spousal support only if the divorce decree contains an express reservation of jurisdiction."). *See also* R.C. 3105.18(E)(1).

{¶22} Husband argues that Wife stipulated to the fact that she remarried Mr. Abdul on September 22, 2016, which should have terminated his spousal support obligation. Despite Wife's opposition to the termination of spousal support and her claim that Mr. Abdul was already married at the time of his 2016 marriage to Wife, Husband argues that Wife's testimony and Exhibit 6 did not constitute sufficient evidence to demonstrate that Mr. Abdul was already married, and the trial court therefore erred in finding that Wife's 2016 marriage to Mr. Abdul was void.

{¶23} The trial court's nunc pro tunc final judgment entry of divorce provides that "[s]pousal support * * * shall continue until the death of either party, the remarriage of the Wife[,] or the cohabitation of the Wife with an unrelated adult male." The parties stipulated that Wife attempted to marry Mr. Abdul in Ohio in 2016. Wife testified, however, that Mr. Abdul left for Michigan immediately after they were married in 2016. According to Wife, due to her

religious and cultural beliefs, the 2016 secular marriage was never consummated, she received no financial support from Mr. Abdul, and the couple never cohabited. Wife further testified that, while planning a formal ceremony afterward to announce the marriage to friends and family, she was notified by her son that Mr. Abdul was already married. Her son then sent her a picture of Mr. Abdul and Ms. Elmousleh's 2014 foreign certificate of marriage. Once again, bigamous marriages are void ab initio and of no legal purpose. *Darling*, 44 Ohio App.2d at 7. *See also* R.C. 3101.01(A). Wife testified that she subsequently asked Mr. Abdul to leave the United States and then filed for divorce. Although bigamous marriages are void, a party to a bigamous marriage may nonetheless obtain a divorce. *See* R.C. 3105.01(A) ("The court of common pleas may grant divorces [if] [e]ither party had a husband or wife living at the time of the marriage from which the divorce is sought * * *.").

{¶24} The trial court found Wife's testimony as it related to Mr. Abdul's 2014 marriage to Ms. Elmousleh to be credible. The court found that, despite Husband's denials, he was the one who informed Wife in 2016, through the couple's son, that Mr. Abdul was already married. The court further found that Husband admitted speaking to Mr. Abdul, while pretending to be Wife's son, and telling him he needed to "admit to [Wife] that he was married." The court also found that the evidence demonstrated that Mr. Abdul did not support Wife and that the couple never cohabited prior to the attempted 2016 marriage. It therefore concluded that Wife's attempted 2016 marriage to Mr. Abdul should be treated "as though it never existed."

{¶25} Regarding the alleged religious marriage in 2015, Husband claims that his own testimony and the pictures of Wife's "open and intimate relationship" with Mr. Abdul constituted sufficient evidence of a religious marriage. Husband testified that Wife is a devout Muslim and, according to her religious beliefs, she should not eat from the same plate as Mr. Abdul, touch

him, or show him affection in public unless they are married to each other. Husband introduced into evidence pictures of Wife and Mr. Abdul together while outside of the United States in 2015. He also attempted to introduce text messages from others in the Middle East, but the messages were deemed inadmissible hearsay. Contrary to Husband's claims, Wife testified at the hearing that she never entered into any religious marriage with Mr. Abdul in 2015. She testified that she is an artist and explained that the pictures were all taken in public amongst many of her artist friends, including Mr. Abdul, while they all traveled to various art shows throughout different countries. She also testified that it is "no problem" in her religion to be affectionate with another person in public.

{¶26} The trial court found that Husband did not present sufficient evidence to prove that a religious marriage occurred between Wife and Mr. Abdul in 2015, such as any documentation establishing that said marriage occurred. The court declined to infer the existence of a religious marriage based on Husband's pictures of Wife and Mr. Abdul at art shows along with inadmissible hearsay.

{¶27} Upon review, there is competent, credible evidence in the record supporting the trial court's conclusions that Mr. Abdul was already married when he attempted to marry Wife in 2016 and that Husband failed to present sufficient evidence of a 2015 religious marriage between Wife and Mr. Abdul. As such, Husband has not demonstrated that the trial court abused its discretion in failing to terminate his spousal support obligations.

{¶28} Accordingly, Husband's first assignment of error is overruled.

### ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED AND IT WAS AN ABUSE OF DISCRETION IN FINDING APPELLANT IN CONTEMPT OF COURT.

**{¶29}** In his fourth assignment of error, Husband argues that the trial court abused its discretion in finding him in contempt of court for failure to pay spousal support. We disagree.

**{¶30}** Contempt of court may be generally defined as disobedience of a court order or conduct that brings the administration of justice into disrespect or impedes a court's ability to perform its functions. *Freeman v. Freeman*, 9th Dist. Wayne No. 07CA0036, 2007-Ohio-6400, ¶ 45. *See also* R.C. 2705.02. Civil contempt requires proof by clear and convincing evidence. *Zemla v. Zemla*, 9th Dist. Wayne No. 11CA0010, 2012-Ohio-2829, ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more certain than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "To establish contempt, the moving party must 'establish a valid court order, knowledge of the order by the defendant, and a violation of the order.'" *Henry v. Henry*, 9th Dist. Summit No. 27696, 2015-Ohio-4350, ¶ 12, quoting *State v. Komadina*, 9th Dist. Lorain No. 03CA008325, 2004-Ohio-4962, ¶ 11. "'A prima facie case of contempt is established where the divorce decree is before the court along with proof of the contemnor's failure to comply therewith.'" *Nelson v. Nelson*, 9th Dist. Medina No. 10CA0115-M, 2011-Ohio-6200, ¶ 30, quoting *Riley v. Riley*, 9th Dist. Summit No. 22777, 2006-Ohio-656, ¶ 25, quoting *Robinson v. Robinson*, 6th Dist. Wood No. 93WD053, 1994 WL 110846, *3 (Mar. 31, 1994). The alleged contemnor must then present evidence of his inability to comply with the order or any other available defense. *Henry* at ¶ 12; *Zemla* at ¶ 11.

**{¶31}** We review a trial court's contempt finding for an abuse of discretion. *Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 47. An abuse of discretion is

present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶32} Husband argues that the trial court abused its discretion and erred in finding him in contempt of court for failure to pay spousal support because (1) he made substantial overpayments toward spousal support and (2) the issue of Wife's remarriage has not yet been resolved. According to Husband, if he ultimately succeeds in this matter he will have made a "gross overpayment with no reasonable expectation of recouping that overpayment."

{¶33} Husband has failed to direct us to any legal authority in support of these arguments, *see* App.R. 16(A)(7), and we likewise find no merit in them. There is no dispute that the nunc pro tunc final judgment entry of divorce was a valid court order and that Husband was aware of it. The divorce decree awarded spousal support to be paid from Husband to Wife in the amount of $2,750 per month "effective August 5, 2014 and [continuing] until the death of either party, the remarriage of the Wife or the cohabitation of the Wife with an unrelated adult male." Husband was awarded credit toward his spousal support obligations based on a $37,250 deferred dowry payment and $15,200 in temporary spousal support payments. Ultimately, after consideration of these payments, the court reduced Husband's monthly spousal support payments to $2,250 per month, beginning April 5, 2015, and lasting for a period of 61 months, at which time his spousal support payments automatically reverted back to $2,750 per month.

{¶34} Husband never appealed the nunc pro tunc final judgment entry of divorce. At the May 2018 final hearing on the motions, Wife testified that Husband paid her $4,000 in either April or May of 2015, $2,000 of which she applied to a loan owed to her by Husband from December 2014. Husband testified that he actually paid her $4,500, purportedly satisfying two

months of spousal support payments, but neither party submitted any documentation regarding the $4,000 or $4,500 payment. No evidence of any additional payments beyond that was introduced, and the trial court consequently found Husband to be in contempt of court for failure to make spousal support payments. The court ordered Husband to serve four days in jail, but permitted him to purge the contempt by making spousal support payments of $2,250 per month (plus a 2% processing fee) for a period of four months, beginning November 1, 2018.

{¶35} Thus, we conclude that clear and convincing evidence was introduced showing the existence of a valid court order along with Husband's knowledge of, and failure to comply with, that order. *See Henry* at ¶ 12. Husband introduced no evidence to either rebut this initial showing of contempt or to establish any affirmative defense regarding his nonpayment of spousal support. *See Henry* at ¶ 12, quoting *Zemla* at ¶ 11 ("'Once the movant proves [her] prima facie case, the contemnor must present evidence of [his] inability to comply with the order or any other available defense.'"). *See also Watral v. Watral*, 9th Dist. Medina No. 05CA0017-M, 2005-Ohio-6917, ¶ 13, quoting *Herold v. Herold*, 10th Dist. Franklin No. 04AP-206, 2004-Ohio-6727, ¶ 28, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 140 (1984) ("It is well-established that once a defendant's failure to pay court-ordered [payments] has been sufficiently proven, the defendant may raise inability to comply as an affirmative defense to contempt."). Accordingly, we cannot say that the trial court abused its discretion in finding Husband to be in contempt of court for his failure to pay spousal support.

{¶36} Husband's fourth assignment of error is overruled.

III.

{¶37} Husband's assignments of error are all overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶38} As to Husband's fourth assignment of error, I respectfully dissent as I would conclude that the trial court abused its discretion in finding Husband in contempt because no willful violation of the trial court's order was demonstrated. This is particularly so given the

facts and circumstances before us; it is undisputed that wife at the very least attempted to get remarried, and Husband did file a motion to terminate spousal support.

APPEARANCES:

JAMES R. RANFTL, Attorney at Law, for Appellant.

CANDACE KIM KNOX, Attorney at Law, for Appellee.